IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| FERNANDO LOPEZ | § | |
| v. | § | CIVIL ACTION NO. 9:10cv124 |
| PHYSICIAN'S ASSISTANT HANSON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Fernando Lopez, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants in the lawsuit, Lopez named physician's assistant Janice Hanson and Dr. Robert Behrns.[1]

An evidentiary hearing was conducted on December 9, 2010, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

At the hearing and in his complaint, Lopez said that he developed two bilateral inguinal hernias while working in the furniture factory at the Gib Lewis Unit. He said that at first, he was told that these were not a life-threatening situation, but that he had to be careful because if the hernias

---

[1] In his original complaint, Lopez named as defendants the Gib Lewis Unit and the unit health services department, the State of Texas, and Texas Governor Rick Perry. At the evidentiary hearing, the Court explained to Lopez that none of these were proper defendants in a case of this type, and Lopez stated that he wished to sue Hanson and Dr. Behrns. Those other remaining defendants were terminated based upon Lopez's statement, and the case proceeded against Hanson and Dr. Behrns. *See* Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990) (Spears hearing is "in the nature of an amended complaint or more definite statement").

1

strangle themselves, they could kill him. He said that the medical staff were refusing to give him proper attention and took his medication and hernia belt away, and that he was being required to work outside of his medical restrictions.

Lopez stated that he has been told that the only way to repair his hernias is through surgery, but when he went to the hospital in Galveston, the surgeon said that he had more important things to worry about than Lopez's hernia, and so Lopez should just "go back to his unit and not worry about it."

Nurse Tara Patton, a TDCJ correctional nurse also present at the evidentiary hearing, testified that normally, a medical provider will evaluate a patient with a hernia in the clinic. If the hernia is reducible, meaning that the contents of the herniated area can be pushed back into place, the patient is not considered a surgical candidate. If the hernia is not reducible, sometimes called "incarcerated" or "strangulated," then the patient is referred to the speciality clinic at Galveston, and a decision on surgery is made there. Nurse Patton stated that a strangulated hernia is one in which the blood flow to the area is impeded, while an incarcerated hernia cannot be pushed back into place but the blood flow is not impeded.

According to Lopez, the doctors in Galveston told him that the hernia that he had on his left side could be pushed in, but the hernia on his right side could not. He stated that he was given a hernia belt, but Hanson told him that he did not need it any more. She also took his medication away, Lopez said; he explained that he had broken his hand and was given ibuprofen 800, but this was taken away because he was also on a pain medication called salsalate, and these could not be mixed. However, Lopez stated that "whenever she took my ibuprofen, when my hand healed I asked her if she could put me back on salsalate to help me with the pain and she said no, she wasn't going to give me nothing."

Lopez stated that when he asked Dr. Barnes for a bottom bunk restriction, the doctor refused, saying that there was not a medical determination for him to be on a bottom bunk. He saw another physician, Dr. Hamoudi, who asked that Lopez be given a bottom bunk pass.

Ginger Lively, a TDCJ regional grievance coordinator also present at the hearing, indicated that Lopez had not exhausted his administrative remedies, because while he had filed a Step One grievance, he had not filed a Step Two appeal. In response, Lopez stated that "if I wrote a Step One and then wrote a Step Two, which they never returned to me back, they never answered on that Step Two agrievance [sic] on – I had a Step Two agrievance [sic] written on Dr. Barnes and – I guess it disappeared or something. They never returned it back. I kept on writing the agrievance [sic] department to ask them about it and they said they don't have the record of it."

Following the hearing, the Court ordered Hanson and Dr. Behrns to answer the lawsuit. On May 5, 2011, the Defendants filed their motion for summary judgment. Lopez has not filed a response *per se*, although he did file a "motion for final judgment" on June 2, 2011.

Legal Standards and Analysis

General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is

entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Fifth Circuit has stated that once the defendants have shifted the burden to the plaintiff by properly supporting their motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only

4

a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The court added that "summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." Little, 37 F.3d at 1075.

The movant has the initial burden of proof to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law. John v. State of Louisiana Bd. of Trustees for State Colleges and Universities, 757 F.2d 698, 708 (5th Cir. 1985). Once the movant has done so, the burden then shifts to the plaintiff, who must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claims; the district has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). As for material facts on which the plaintiff will bear the burden of proof at trial, he must come forward with evidence sufficient to enable him to survive a motion for directed verdict at trial. Stults, 76 F.3d at 656; *see also* Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim).

Application of the Standards to the Present Case

### I. Exhaustion

Prior to the passage of the Prison Litigation Reform Act, Public Law 104-134 (April 26, 1996), lawsuits brought by inmates who had not exhausted their administrative remedies would be stayed for a period of up to 180 days in order to permit exhaustion. 42 U.S.C. §1997e(a)(1). This provision has now been deleted from the law. As amended, 42 U.S.C. §1997e(a) reads as follows:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C., Section 1997e(a), as amended by Public Law 104-134, Title I, sec. 101, April 26, 1996, *renumbered as* Title I, Public Law 104-140, sec. 1 (May 2, 1996, 110 Stat. 1327). No statutory basis now exists for placing a stay on the action; instead, completion of the exhaustion process is a mandatory prerequisite for filing the lawsuit. The Fifth Circuit has held that where an inmate fails to exhaust his administrative remedies, the lawsuit may be dismissed with prejudice for purposes of proceeding *in forma pauperis*. Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998).

In this case, the Defendants properly raised Lopez's failure to exhaust administrative remedies in their motion for summary judgment. *See* Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). In the support of their motion, the Defendants offered summary judgment evidence showing that between April of 2009 and October of 2010, Lopez filed six Step One grievances, of which two concerned medical issues. In the first of these, no. 2009136240, Lopez complained that Hanson and Dr. Behrns violated his medical restrictions because he has a hernia and has been seen by the doctor in Galveston. He states that he was supposed to have surgery but Hanson and Dr. Behrns refuse to assign him to a bottom bunk, which causes him pain. He has talked to security officers, but they tell him that they cannot give him a bottom bunk without an assignment from the medical staff. The response to this grievance was that Lopez was seen by Dr. Behrns on May 6, 2009, and the doctor's findings indicated that a low bunk restriction was not medically indicated. The summary judgment evidence showed that Lopez did not file a Step Two appeal of this grievance.

The other grievance which Lopez filed concerning his medical condition was grievance no. 2009147366, filed on May 6, 2009. In this grievance, Lopez says that he saw Dr. Behrns that day and that he asked for a bottom bunk assignment, but this request was refused. He says that his hernia needs to "bust up" so that something will be done about it, and says that Dr. Behrns is refusing to give him proper medical help. The response to this grievance was that Lopez had been examined by three medical providers since March of 2009, and none of these indicated that a bottom bunk pass

was medically indicated. The summary judgment evidence again showed that Lopez did not file an appeal of this grievance.

As noted above, Lopez stated at the hearing, somewhat nebulously, that he filed a Step Two grievance but "it must have disappeared or something." Conclusory allegations that a grievance was filed but that it "must have been lost or misplaced," or that a prisoner was "thwarted" in his efforts to seek redress through the grievance process, are not sufficient to overcome competent summary judgment evidence. Wiley v. Civigenics, civil action no. 5:07cv60, 2009 WL 260948 (E.D.Tex., February 3, 2009, no appeal taken); Brown v. Burnett, civil action no. 6:09cv156, 2010 WL 1997777 (E.D.Tex., May 17. 2010, appeal dismissed); Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004). This comports with the general rule that conclusory allegations or unsubstantiated assertions cannot defeat a properly supported motion for summary judgment. Little, 37 F.3d at 1075. Lopez's conclusory assertions at the evidentiary hearing do not overcome the competent summary judgment of the defendants to the effect that he did not exhaust his administrative remedies, and his lawsuit may be dismissed on this basis.

## II. The Merits of Lopez's Claims

In addition, Lopez's claims fail on the merits as well. The summary judgment evidence shows that in February of 2005, Lopez was diagnosed with a right-sided inguinal hernia that was reducible. Restrictions of a lower bunk, no walking over 400 yards, and no lifting over 25 pounds were ordered.

On May 3, 2006, Lopez was seen by Dr. Thomas, who found a small reducible ring hernia. Lopez wanted the hernia repaired, but Dr. Thomas explained the policy and guidelines, including the fact that hernia surgery complications can be greater than if no surgery is performed. He told Thomas to apply manual pressure to the hernia if he coughs, and gave him a "jock strap" for 180 days.

A month later, on June 1, 2006, Lopez said that the jock strap was not helping and asked for pain medications. He was seen the next day by a physician's assistant named Moore. Lopez

reported that he suffered pain after working out, which included over 100 sit-ups and 100 pushups every other day, and was advised to discontinue strenuous workouts. An examination showed a very small right inguinal hernia which was easily reducible without signs of strangulation or incarceration. Lopez denied having any of the criteria required for a low bunk restriction, and so Moore ordered him another jock strap, that he notify nursing for Tylenol as required, to discontinue the lower bunk and no walking restrictions, and for continued monitoring of the hernia.

On September 19, 2007, Lopez again saw Moore. This exam showed a small right inguinal hernia. Lopez was provided with two jock straps, advised of the etiology of an inguinal hernia, and told to return to the clinic if it began to protrude.

Two months later, on November 15, 2007, Lopez submitted a sick call request asking to be seen for follow-up. He was seen via telemed by a physician's assistant named Muldowny on November 19. Muldowny ordered a follow-up with the unit provider and that consideration be given to a general surgery consult.

This followup was done by Dr. Behrns on November 29, 2007. At that time, Dr. Behrns noted a small reducible right inguinal hernia , and added work restrictions for "no bending at the waist" and "no squatting." He also ordered a pain medication called salsalate 500 mg, which is a non-steroidal anti-inflammatory pain reliever. Lopez's pass for the jock straps was renewed on February 5, 2008, by a physician's assistant named Lester.

On February 26, 2008, Lopez was seen by a physician's assistant named Hughes, who noted that there had been no evaluation by General Surgery, but that Lopez was taking salsalate with good effect. Hughes found positive bowel sounds in all quadrants, no pain upon pushing the abdomen and releasing quickly, and positive hernia to cough reflex on the right side and a negative hernia to cough reflex on the left.[2] He renewed the prescription for salsalate and submitted a routine referral to general surgery for evaluation.

---

[2] A positive hernia to cough reflex indicates the presence of a hernia.

On March 19, 2008, Lopez was seen at sick call requesting that his medication be renewed, which was done by a physician's assistant named Lester. The next week, Hughes again noted a positive hernia to cough reflex on the right side, and this time observed a bulge in the left inguinal canal, although no hernia was noted. He ordered that Lopez be medically unassigned for six months pending recommendations from the general surgery department.

Lopez again saw Dr. Behrns on May 9, 2008, and the doctor found a reducible right inguinal hernia. He increased Lopez's pain medication from one to two pills twice a day and ordered a urinalysis. One month later, on June 6, Lopez filed a sick call request asked that his medical unassignment be removed because he wanted to get a job as a sewing machine operator. A nurse practitioner named Smock saw him by telemed and removed the restriction, but added a "sedentary only" restriction.

Lopez was seen in the general surgery clinic at the University of Texas Medical Branch Hospital on July 14, 2008. The surgeon found a small reducible right inguinal hernia that was positive for cough reflex, but that there was no need for surgery. A high fiber diet was recommended along with an increase in fluid intake.

After his return from Galveston, Lopez was seen by a physician's assistant named Evans on July 21, 2008. Evans noted that Lopez had a history of a hernia, but that he had normal bowel sounds, and Galveston had not recommended surgery. He ordered a pain medication called Motrin 600 mg for 10 days and discontinued all of Lopez's restrictions except for a lifting restriction of no more than 50 pounds.

Lopez's prescription for salsalate was renewed by Dr. Behrns on August 14, 2008, and Lopez was seen at nursing sick call on September 22. He was referred to a provider and on September 24, 2008, Lopez saw nurse practitioner Janice Hanson. She noted a reducible right inguinal hernia and renewed his prescription for salsalate.

Three weeks later, on October 17, 2008, Lopez complained of hernia pain and was referred to a provider for evaluation. However, at 12;10 a.m. on October 19, Lopez was seen in the unit

9

emergency room for a complaint of severe ain, radiating to the right testicle. He was sent to the Tyler County Hospital for evaluation, but lab work was normal and an examination found no hernia, so Lopez was sent back to the unit.

Later that same day, at 3:42 p.m., Lopez was brought to the unit infirmary in a wheelchair complaining of right abdominal pain. He explained that he had eaten a peanut butter sandwich, which caused him to vomit. The nurse consulted with a physician named Dr. Zond and gave Lopez a shot of an anti-nausea medication.

On October 22, 2008, Lopez was seen by Hanson with a complaint of pain in the left inguinal area when walking. He asked for a support strap, and Hanson wrote orders for him to receive one; however, she noted that he was "fairly uncooperative" during the exam and refused to relax his abdominal muscles.

Lopez again saw Hanson on December 31, when he requested pain medication refills and additional work restrictions. Hanson found a right inguinal hernial which was "easily reducible." She refilled his prescription for salsalate and gave him restrictions for sedentary work only and no repetitive squatting.

On February 19, 2009, Muldowny renewed Lopez's athletic support strap for 180 days. On March 9, Lopez was seen at sick call with complaints that he continued to be refuse surgery. He asked to see the doctor, and his chart was referred to a provider. He saw Muldowny by telemed on March 12, at which time he denied nausea, vomiting, abdominal pain, pain with defecation, fever, chills, or urinary or penile dysfunction. He was told to follow up with a unit provider. Lopez saw Hanson on March 26, and asked if his "hernia belt" had arrived at the unit. Hanson noted that Lopez did not complain of abdominal pain and sat down in and got up from a low chair without difficulty. She found that his hernia was unchanged since the last exam, non-tender and easily reducible, and told him that the hernia belt had not yet arrived.

On April 3, 2009, Lopez received a double truss belt. A week later, on April 11, he was seen in nursing sick call; Lopez was upset about the removal of his restrictions, including the lower bunk

restriction. He did not appear to be in acute distress and his chart was referred to the provider. On April 13, security called the medical department and indicated that Lopez had fallen in his cell. He was alert and oriented with complaints of hernia and head pain, and said that he had fallen while trying to get into his bunk. Lopez asked why he did not have a bottom bunk pass. The nurse noted that he was able to get up off the floor and into the wheelchair, and then out of the wheelchair and into the stretcher. In addition, the nurse indicated that Lopez had no swelling to the back of the head, clear and logical speech, steady gait, and no vomiting, although he had swelling to the scrotum and a palpable hernia in the right inguinal area. The nurse consulted with Hanson, and orders were given for blood work to rule out appendicitis. The blood work showed a normal white count, and a urinalysis also showed no abnormalities. He was told to follow up in the morning, but apparently was unable to do so because of a unit lockdown.

On May 6, 2009, Dr. Behrns examined Lopez to see if a lower bunk restriction was warranted, and he concluded that it was not, although he did add "no bending at the waist" as a work restriction. On July 12, 2009, Lopez saw Muldowny by telemed, and Muldowny also determined that Lopez did not meet low bunk or low row guidelines. He advised that Lopez follow up with a unit provider and advised him of the criteria for hernia surgery. On July 17, 2009, Lopez was examined by Dr. Hamoudi, who concluded that he had an irreducible hernia, referred him to General Surgery, and gave him a six-month bottom bunk restriction. On August 20, Lopez was seen by Dr. Kuykendall in General Surgery by video, and Dr. Kuykendall also noted an irreducible right inguinal hernia; he ordered a routine referral to General Surgery.

However, on December 4, 2009, Lopez signed a Refusal of Treatment form for his UTMB General Surgery appointment. He asked on December 29 to be seen for renewal of pain medication, but did not show up for a scheduled appointment on December 31.

On March 4, 2010, Lopez asked that his sedentary work only restriction be lifted so that he could get a job in the kitchen. This restriction was lifted by Dr. Hamoudi on March 11. On March 31, Lopez was seen for a renewal of his double truss pass and asked about whether he was scheduled

for surgery; the nurse told him that there was a pending referral and secured orders from Hanson to renew the double truss belt for 90 days.

On May 11, 2010, Lopez was seen at nursing sick call; the records note that he appeared upset because he wanted to see the provider to have restrictions added. He said that he could not work or be on a top bunk. Lopez was seen on May 14 by a physician named Dr. Slayton, who found that Lopez had a non-reducible right inguinal hernia. He ordered refills of pain medication and gave Lopez additional work restrictions.

A month later, on June 17, 2010, Lopez was seen in the clinic complaining of severe pain in the left groin. Hanson was able to reduce the hernia through relaxation and soft pressure, and Lopez was able to walk without assistance afterwards. Hanson ordered medical unassignment for 30 days and noted that he was to be seen in Galveston that month. On June 21, Lopez was seen by Dr. Gore from General Surgery in Galveston and determined that there was no need for surgery. Nonetheless, on June 24, Hanson gave a verbal order that Lopez was to have a permanent bottom bunk restriction.

The next week, on July 1, Lopez was again seen by Hanson, who noted that the surgeon in Galveston had said that there was no need at the present time for surgical repair. She discussed the surgery recommendation with Lopez, who was unhappy about it and mentioned going to court. Hanson explained to him that his condition was not an emergency requiring surgical intervention and that if his condition worsened, he would be referred back to Galveston for another surgical consultation. Lopez's lawsuit was filed on September 13, 2010.

Legal Standards Regarding Medical Claims

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

12

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, the competent summary judgment evidence plainly refutes any contention that the Defendants were deliberately indifferent to Lopez's serious medical needs. Lopez was repeatedly

13

seen by medical professionals, including two trips to the hospital in Galveston. The surgeons in Galveston concluded each time that surgical repair was not necessary, and Lopez's disagreement with their medical judgment does not show that they were deliberately indifferent to his needs.

Similarly, the fact that Lopez did not have a bottom bunk pass at all of the times that he thought one was appropriate does not show that a constitutional violation. In effect, Lopez is disagreeing with the judgment of the medical professionals that such a pass was not necessary and that he did not meet the TDCJ criteria for obtaining such a pass. This disagreement does not show that a constitutional violation took place. Norton, 122 F.3d at 293. The record shows that on multiple occasions, Lopez asked that job restrictions given to him be changed or lifted so that he could get a job that he wanted.

In addition, although the medical professionals who examined him determined that he did not require surgical intervention, Lopez routinely received other forms of treatment, including pain medication, athletic supporters, a double truss belt, and instruction in self-care. Although Lopez asserts that Hanson took away his hernia belt, he does not say when this occurred. On March 31, 2010, the medical records show that Hanson renewed his double truss belt for 90 days. Even if Hanson took away the belt at one point, possibly because his pass to have the belt had expired, Lopez has failed to show that this action amounted to deliberate indifference to his serious medical needs. Lopez has entirely failed to show that the defendants in this case "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino, 239 F.3d at 756. Lopez's constitutional claims are without merit.

In a brief in support of his claims, Lopez appears to claim that he was the victim of "racial profiling." However, he offers no evidence to show or even intimate that the fact that he did not receive the medical treatment which he believed appropriate was because of his race. The Fifth Circuit has stated that in order to state an equal protection claim, a plaintiff must allege that similarly situated persons have been treated differently, and he must allege purposeful or intentional

discrimination; conclusory allegations of racial discrimination are not sufficient. <u>Muhammed v. Lynaugh</u>, 966 F.2d 901, 903 (5th Cir. 1992); <u>McKnight v. Eason</u>, 227 Fed.Appx. 356, 2007 WL 1334184 (5th Cir. 2007). Because Lopez offers nothing but conclusory allegations in this regard, his claim on this point is without merit.

Lopez also appears to invoke state law, citing a Texas statute concerning "gross negligence" as meaning, in his words, "an entire want of care as to establish that act of omission was result of actual conscious indifference to rights, safety, welfare of the person affected."

The citation to state law is in effect an invocation of the pendent jurisdiction (now known as supplemental jurisdiction) of the district court. Pendent jurisdiction is codified in 28 U.S.C. §1367, for all civil actions filed on or after December 1, 1990. See Public Law 101-650, Section 310(c); <u>Whalen v. Carter</u>, 954 F.2d 1087, 1097 n.10 (5th Cir. 1992).

28 U.S.C. §1367(a) reads as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (b) refers to actions filed under diversity jurisdiction and thus is not applicable in this case. Subsection (c) reads as follows:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) The claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are compelling reasons for declining jurisdiction.

Here, the Court acquired original jurisdiction based on the plaintiff's claim of a violation of federal law under 42 U.S.C. §1983 and the Eighth Amendment to the U.S. Constitution. *See* Baker v. McCollan, 443 U.S. 137 (1979). However, the plaintiff has failed to show that a constitutional violation occurred. Thus, the claims over which this Court possessed original jurisdiction are without merit, and so this Court declines supplemental jurisdiction over the plaintiff's state law claims, deferring instead to the laws and judicial processes of the State of Texas. 28 U.S.C. §1367(c)(3); Slaughter v. Allstate Insurance Co., 803 F.2d 857 (5th Cir. 1986) (supplemental jurisdiction should not ordinarily be exercised when there is no federal claim). Because the Court declines supplemental jurisdiction over the state law claims, the statute of limitations on such claims should be tolled from the date the lawsuit was originally filed until thirty days after the final judgment dismissing the action is entered on the docket. 28 U.S.C. §1367(d).

In his brief and his "motion for final judgment," Lopez invokes the Americans with Disabilities Act and the Rehabilitation Act, saying that he has been adversely affected by the government agency's decision not to grant him surgery, and that he is seeking "injunctive relief with mental anguish for violations of the Hippocratic Oath." He also alludes to retaliation, but offers no facts whatsoever in support of such a claim.

The Americans with Disabilities Act and the Rehabilitation Act provide, in pertinent part, that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity. The Fifth Circuit has explained that to establish a claim under these laws, the plaintiff must show that (1) that he is a qualified individual under the Act; (2) that he is being excluded from participation in or being denied benefits of services, programs, or activities for which the defendants are responsible, or that he is otherwise being discriminated against by the defendants; and (3) that this exclusion, denial of benefits, or discrimination is by reason of the disability. Tuft v. Texas. 410 Fed.Appx. 770, 2011 WL 72198 (5th Cir., Jan. 7, 2011), *citing* Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir.1997);

*see also* Davidson v. Texas Department of Criminal Justice, 91 Fed.Appx. 963 (5th Cir., March 19, 2004) (not selected for publication in the Federal Reporter) (rejecting inmate's ADA claim because the inmate failed to show that he was adversely treated solely because of his handicap).

In this case, the "services, programs, or activities for which the defendants are responsible" are medical evaluation and treatment by qualified personnel. Lopez has not shown that he has been denied the benefits of this service - he has been repeatedly seen and treated by multiple doctors, nurse practitioners, and physician's assistants. Neither the ADA nor the Rehabilitation Act guarantee Lopez access to the particular *type* of medical treatment which he believes most appropriate, which in this case is hernia surgery, particularly when the medical personnel who have examined him have determined that such treatment is inappropriate or unnecessary. Lopez has failed to show that he has been the victim of discrimination, much less discrimination based upon any disability, and so his claims under the Americans with Disabilities Act and the Rehabilitation Act are without merit.

## Qualified Immunity

In their answer and motion for summary judgment, the Defendants assert that they are entitled to qualified immunity. The invocation of qualified immunity applies to claims for monetary damages brought against a government official in his or her individual capacity. The Fifth Circuit has stated that a qualified immunity defense serves to shield a Government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a §1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law, and second, that the defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). These two prongs may be considered in either order. Saucier v. Katz, 533 U.S. 194, 201 (2001).

In this case, Lopez has failed to discharge his burden because he has not shown that any constitutional violations were committed, nor that either of the Defendants acted unreasonably in light of clearly established federal law. The Fifth Circuit has specifically held that the plaintiff's burden of overcoming the qualified immunity defense cannot be discharged by conclusory allegations and assertions. Michalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005). Lopez's allegations are not sufficient to overcome the Defendants' entitlement to qualified immunity, which entitlement was established through competent summary judgment evidence. The motion for summary judgment should be granted on this basis as well. . It is accordingly

ORDERED that the Defendants' motion for summary judgment (docket no. 28) be and hereby is GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as to all claims under federal law which Lopez raises and DISMISSED without prejudice as to any state-law claims which Lopez may raise in the courts of the State of Texas. The statute of limitations on such state-law claims is hereby TOLLED from the date the lawsuit was originally filed until thirty days after the final judgment dismissing the action is entered on the docket. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **20** day of **June, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE